# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| _____ | ) | |
| | ) | |
| **MICHAEL E. TAVARES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 22-cv-10719-DJC** |
| | ) | |
| **BOSE CORPORATION, EMPLOYEES'** | ) | |
| **RETIREMENT PLAN OF BOSE** | ) | |
| **CORPORATION and BOSE** | ) | |
| **COMMITTEE ON EMPLOYEE BENEFIT** | ) | |
| **PLANS,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                        **September 11, 2024**

## I.    Introduction

Plaintiff Michael E. Tavares ("Tavares") brought this action against Defendants Bose Corporation, Employees' Retirement Plan of Bose Corporation and Bose Committee on Employee Benefit Plans (collectively, "Bose") under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132 *et seq*., challenging Bose's denial of Tavares's pension benefits.  D. 1.  Tavares asserts a claim for denial of benefits under 29 U.S.C. §1132(a)(2)(B) (Count I) and a claim for equitable relief under 29 U.S.C. §1132(a)(3) (Count II).  Id. at 14-16.  Bose and Tavares have both moved for summary judgment.  D. 30; D. 34.  For the reasons stated below, the Court ALLOWS Bose's motion for summary judgment, D. 30, and DENIES Tavares's motion for summary judgment, D. 34.

## II.     Factual Background

The following facts are drawn from the administrative record[1] submitted to the Court by Bose, D. 21, Bose's statement of material facts, D. 33, Tavares's response, D. 42, Tavares's statement of material facts, D. 36, and Bose's response, D. 39, and are undisputed unless otherwise noted.[2]

### A.     <u>The Bose Retirement Plans</u>

#### 1.     *The 1989 Employee Retirement Plan*

Tavares was employed by Bose from 1995 to 1999.  AR 3, 30.  As an employee of Bose, Tavares had participated in the Bose Employees' Retirement Plan, a defined benefit pension plan. AR 33-34, 41.  At the time Tavares decided to leave Bose, the plan terms in effect were the 1989 Amended and Restated Plan Document (the "1989 Plan").  AR 3, 46-85.  The Bose Committee on Employee Benefit Plans, (the "Bose Committee"), was the Named Fiduciary and Plan Administrator.  AR 65-66.  Specifically, the Bose Committee had the "authority to construe the terms of the Plan" and "to determine eligibility to participate in the Plan."  AR 67.

Under the terms of the 1989 Plan, a participant who terminates their employment with Bose before retirement is subject to an "Immediate Cash Out" of their pension benefits under Section

---

[1] All references to the administrative record, D. 21, shall be "AR."

[2] Tavares disputes the consideration of the Berthiaume Declaration, D. 32, cited in Bose's Statement of Facts, D. 42 at 1-2.  In addition to his claim for denial of benefits (Count I), Tavares has sought equitable relief pursuant to § 1132(a)(3) (Count II).  As to Count II, the Court is not confined to the Administrative Record for that review.  <u>See, e.g.</u>, <u>Brenner v. Metro. Life Ins. Co.</u>, No. 11-cv-12096-GAO, 2015 WL 1307394, at *4 (D. Mass. Mar. 23, 2015) (applying the summary judgment standard of review to assess claim for equitable relief under § 1132(a)(3) which allows the moving party to support their assertion that there is not a genuine issue of material facts "by affidavits, admissions, or other materials of evidentiary quality") (internal citation and quotation marks omitted).  Accordingly, the Court has considered the uncontroverted affidavit to the extent discussed below as to Count II.

4.16.  AR 61.  The 1989 Plan also included a specific provision for those employees who were

rehired concerning how prior years of service count towards the participant's vested benefits.  AR.

46. Section 3.03 provided that:

> [i]n the case of a Participant whose nonforfeitable percentage is zero and who incurs
> five or more consecutive one-year Breaks in Service, then Benefit Years of Service
> earned before the Breaks in Service shall be disregarded.  Also, if a Participant is
> rehired by the Employer, Benefit Years of Service with respect to which the
> Participant previously received full payment of the Participant's vested Accrued
> Benefit shall be disregarded unless the Participant (1) received less than the present
> value of the Participant's full Accrued Benefits (i.e., forfeited the non-vested
> portion of his Accrued Benefit) and (2) repays the payment received for his vested
> Accrued Benefit plus interest (at the lesser of 5% or the rate determined for
> purposes of Code Section 411(c)(2)(C) before the later of (1) two years after the
> Participant is rehired by the Employer or (2) the earlier of (a) five years after the
> Participant is rehired by the Employer, (b) the close of the first period of five
> consecutive one-year Breaks in Service commencing after the original payment to
> the Participant, or (c) if the payment was other than on account of separation from
> service, five years after the original payment.

AR 46-47.  As relevant to that provision, the 1989 Plan defined a "Break in Service" as "a twelve-

consecutive month period during which the Participant does not complete more than 500 Hours of

Service."  AR 44.  The 1989 Plan defined a "Benefit Year of Service" to mean "a Plan Year during

which the Participant had not less than 1,000 Hours of Service as an Employee."  AR 46.

### 2.    The 2012 and 2017 Bose Retirement Plans

As reflected in the Administrative Record, Bose restated the terms of its plan in 2012 (the

"2012 Plan") and in 2017 (the "2017 Plan").  AR 6, 157, 329.  Under these Plans, the Bose

Committee remained the Named Fiduciary and Plan Administrator.  AR 207, 388.  Specifically,

the Bose Committee had "the full power and discretionary authority to administer the Plan" and to

determine eligibility to participate in the Plan.[3]  AR 207-08, 388-89.  The Bose Committee's

---

[3] Tavares disputes that the 2017 Plan provides a grant of discretion, D. 33 ¶ 7; D. 42 at ¶ 7, but
the grant of authority is the same in the 2012 Plan, which he does not appear to dispute.  See AR
207-08, 388-89.

decisions shall be "conclusive and binding" in the absence of "clear and convincing evidence that the [Bose] Committee acted arbitrarily and capriciously." AR 207, 388. The Bose Committee can also authorize the payment of benefits under the 2012 and 2017 Plans. AR 208, 389.

The 2012 Plan and 2017 Plan contained a specific section, Section 3.03, entitled "Reemployment." AR 175, 348. As relevant to this provision, the 2012 and 2017 Plans specified that a rehired employee who has incurred a break in service becomes eligible to accrue retirement benefits, "only after completing a Year of Eligibility Service, taking into account only service performed after his or her most recent date of hire." AR 175-76, 348-49. The 2012 and 2017 Plans maintained Section 3.03 from the 1989 Plan as Section 3.03(c) that permitted an employee to have prior years of service count towards the accrued benefit if the employee timely repaid the prior distribution according to the specified terms.[4] As relevant to Section 3.03(c), the 2012 and 2017 Plan defined a "Break in Service" as a "Plan Year during which an Employee or Participant has not completed more than 500 Hours of Service." AR 165, 337. A "Plan Year" was defined as "the twelve-month period ending each December 31." AR 172, 344.

The 2017 Plan also provided a specific contractual limitations period in Section 8.08 for pursuing claims under the Plan which provided that "[a]ny action in court must be filed within three years from the date of the initial failure regarding the benefit claimed." AR 393.

**B.**   **Bose Rehired Tavares in 2016**

In 1999, Tavares voluntarily terminated his employment with Bose. AR 290. On June 25, 1999, Tavares was automatically paid out a lump sum pension benefit of $1,269.98. AR 33.

---

[4] Section 3.03(c) in the 2012 and 2017 Plans is substantively identical to the provision in the 1989 Plan but the numbering of the provision is different. AR 176-77, 349-50.

4

In 2016, Bose rehired Tavares.  AR 87.  At the time of rehire, Tavares received an offer letter that outlined certain terms of his employment and contained a statement concerning benefit eligibility requirements.  AR 88.  The offer letter stated that "[t]he benefits described in the enclosed summary are those presently in effect, are subject to the terms of the plan itself, and may be changed or eliminated at the discretion of Bose Corporation."  Id.  The offer letter attached a "Bose Benefits Summary 2016" that provided an overview of Bose's various benefit programs. (the "Benefits Summary").  AR 92.  In particular, the Benefits Summary contained a section entitled "Employees' Retirement Plan" which stated in relevant part:

> The Bose Employees' Retirement Plan is a defined (non-contributory) plan.  This Plan is designed to provide you with income at retirement age based on your final average earnings and your services of service.  You become an eligible participant after one year of service.  Vesting begins after three years of service, and you are fully vested after seven years.

AR 93.  Tavares acknowledged and signed the Bose offer letter on July 11, 2016.  AR 90.

Tavares also attended a new hire orientation where he was informed of the Bose's retirement plan information and where to find plan documents.[5]  AR 4.  The 2014 Pension Summary Plan Description ("SPD") was in effect at the time of Mr. Tavares's rehire.  AR 7.  In summarizing how a participant vests, the SPD had a section entitled "Breaks in Service/Loss of Credited Service":

> "If you are partially or fully vested and leave the Company before you retire, your prior Years of Benefit Service will be recognized if either:
>
> • You have not received a full payment of your vested accrued benefit, or
> • You received full payment of your vested accrued benefit but you received less than the present value of your full accrued benefit (i.e., you forfeited

_____

[5] Tavares disputes these facts on the basis that these facts are contained in the Berthiaume Declaration that is not part of the Administrative Record.  D. 42 at ¶ 14; see D. 33 ¶ 14 (citing D. 32 ¶ 7).  These underlying facts, however, are contained in the Administrative Record.  See AR 3-9, 455-461.

> the non-vested portion of your accrued benefit) and you repay the previous
> payment received with interest within two years after your reemployment.
> (In certain situations, the two-year repayment period may be extended.
> Contact the Plan Administrator for the rules which apply to your situation.)

AR. 243.  Bose also provided Tavares with online access to his benefit account information, which also included access to view plan documents.[6]  AR 4.  Between 2016 and 2020, Tavares received quarterly account retirement statements that reflected detailed information about his Bose retirement accounts.[7]  Id.

### C.   Tavares Inquired Concerning His Pension Benefits

On April 16, 2019, Tavares emailed Elizabeth LeFleur ("LeFleur") and inquired whether the previous years he worked at Bose from 1995 to 1999 counted towards his pension calculation.[8] AR 134.  LeFleur suggested he call the retirement call center or Laurie Berthiaume, ("Berthiaume") a Bose Retirement Plans Program Manager.  AR 133-34.  Tavares reached out to Berthiaume on April 17, 2019.  AR 133.  That same day, Berthiaume responded to Tavares that he "did receive [his] vested accrued benefit back in 1999 and did not pay it back to the plan within two years of reemployment so [his] prior service does not count in [his] pension service."  Id. Berthiaume stated that her response was based on information from the "Summary Plan Description" which stated the following:

> If you are partially or fully vested and leave the Company before you retire, your
> prior Years of Benefit Service shall be recognized if either: [y]ou have not received
> a full payment of your vested accrued benefit, or [y]ou received full payment of

---

[6] See footnote 5, supra.

[7] Tavares disputes these facts on the basis that they are in the Berthiaume Declaration and not the Administrative Record, D. 42 ¶ 17; D. 33 at ¶ 17 (citing D. 32 ¶ 10), but the periodic pension benefit statements are included in the Administrative Record.  See AR 95-129.

[8] Tavares disputes these facts, D. 42 ¶ 24, but Tavares relies upon the same series of emails in his statement of facts, and which are contained in the Administrative Record.  See AR 132-34; D. 36 ¶¶ 22-27.

your vested accrued benefit but you received less than the present value of your full
accrued benefit (i.e., you forfeited the non-vested portion of your accrued benefit)
and you repay the previous payment received with interest within two years after
your reemployment.

AR 133 (internal quotations omitted).   Tavares responded that he did not "recall getting a

disbursement back in 1999" and he did not know about the repayment option.  Id.  Berthiaume

stated that Tavares received a disbursement on July 26, 1999 and that the information to repay the

distribution would have been in the Summary Plan Description and the packet of information he

received from Empower when Tavares was rehired.  AR 132-33.  On April 19, 2019, Tavares

acknowledged that he received the distribution in 1999 but that the only information he received

during the rehiring process was that his "pension [would be] effective after 7 years of service."

AR 132.

> ### D.   Tavares's Claim for Pension Benefits And Bose Denial

On July 10, 2020, Bose terminated Tavares as part of a reduction in force.  AR 30.  On July

30, 2020, Tavares sent a letter to Bose requesting "an appeal of decisions made in April 2019" and

requested that "Bose recognize my prior years of service in calculating my pension benefit."  Id.

Tavares stated that he reasonably relied on the Benefits Summary attached to his offer letter which

stated that "you are fully vested after seven years of service."  Id.  Tavares claimed that the Benefit

Summary was misleading and due to his prior four and half years of service, he reasonably believed

he only needed three more years of service to vest.  AR 30-31.  Tavares "formally request[ed]"

that Bose allow him to repay the $1,269.98 with interest to be fully vested in the Plan. [9]  AR 31.

---

[9] Tavares disputes that he requested that he be allowed to repay his distribution and states that this
letter constituted "a claim letter under ERISA,"  D. 42 at ¶ 27 (D. 33 at ¶ 27), but the letter
undisputedly states that Tavares was "formally requesting" upon repayment that his prior years of
service be recognized.  AR 31.

On August 14, 2020, Bose responded to Tavares's inquiry and denied his request stating that the "repayment period has now passed [and] therefore you no longer have the option to repay the Plan." AR 137; <u>see</u> AR 277. As the basis for denial, Bose stated that "[t]he Plan rules state that if you incurred a break in service the repayment to the plan must be made within two years after your rehire date," citing Section 3.03(c) of the Plan. AR 137. The letter advised that if Tavares disagreed with the decision that he had 60 days to appeal. <u>Id.</u>

### E.     <u>Tavares's Administrative Appeal</u>

On September 1, 2020, Tavares, represented by counsel, appealed Bose's determination. AR 281-83. As a basis for appeal, Tavares argued that he relied upon the Benefits Summary included in his offer letter which stated that he would be "'fully vested after seven years of service'" and that the Benefits Summary did not make clear that Bose interpreted that phrase to mean continuous service. AR 282. Tavares further claimed that he was not informed of the two-year window to repay the pension disbursement he received after leaving the company in 1999 for his prior years of service to count towards his pension. <u>Id.</u> Tavares urged Bose to reconsider its position and allow him to belatedly repay the pension disbursement. AR 283.

On December 10, 2020, the Bose Committee affirmed its earlier determination and denial of Tavares's claim because "Section 3.03(c) of the Plan required you to repay the benefit taken within two years of commencing reemployment, which you did not do." AR 275. Bose's letter informing Tavares of its decision recounted the documents Bose had reviewed in assessing Tavares's claim and stated:

> [t]he Committee considered , among other things, the materials submitted by you and your attorney, the applicable plan documents and provisions, the language of the benefit statement you received in 2016, and the language of your offer letter that accompanied the benefits statement, along with other information and materials.

AR 273.  Specifically, Bose stated that it relied upon the following plan provisions on which its decision is based: Section 3.03(c) of the 1989, 2012 and 2017 Plans, Section 4.16 of the 1989 Plan, as well as the 2014 Pension Plan Summary Plan Description.  AR 273-75.  The Bose Committee made the following findings upon which it based its denial:

> 1. Following your termination in 1999 and in accordance with terms of the Pension Plan, you received a full distribution of your vested accrued benefit.

> 2. Bose rehired you in July 2016.  At the time of being rehired, Bose provided you with an offer letter and benefit summary that summarized certain terms and conditions of your new employment with Bose.  The language in those documents was sufficiently clear that they were not comprehensive summaries and pointed to other plan documents.

> 3. The applicable plan language related to the requirements to bridge service in the context of a rehire (outlined above) was clear.

> 4. You did not repay the distributed amount within the two-year period outlined in the Pension Plan for such repayments in order to bridge prior service.

> 5. The time period outlined in the Pension Plan for the repayment of the distributed amount has lapsed.

> 6. The Pension Plan controls irrespective of the terms of the benefit summary that you received.  Moreover, there is no reasonable basis to conclude that the benefit summary would have amended the Pension Plan document.

> 7. The Plan met its disclosure obligations.  You received sufficient information, in the form of your retirement benefit statements, your offer letter, and the benefit summary, that you should have taken reasonable steps to inquire further and at a minimum sought further information to understand the Plan's requirements, which were clearly outlined in the Pension Plan documents, but you did not do so.

AR 275-76.  Accordingly, Bose stated that "the Committee hereby denies your claim and affirms the prior decision to deny your claim for benefits under the Pension Plan."  AR 276.

## III.    Procedural History

Tavares instituted this action on May 11, 2022.  D. 1.  The complaint asserts claims under 29 U.S.C. § 1132(a)(1)(B), challenging Bose's denial of pension benefits, (Count I) and, under

29 U.S.C. § 1132(a)(3), for equitable relief (Count II).  Id.  Bose filed the administrative record with the Court, D. 21, and Bose and Tavares subsequently filed cross motions for summary judgment, D. 30; D. 34.  The Court heard the parties on the pending motions and took these matters under advisement.  D. 45.

## IV.    Discussion

### A.    Claim under 29 U.S.C. § 1132(a)(1)(B) (Count I)

#### 1.    Standard of Review

"When, as in this case, a plan administrator has discretion to determine an applicant's eligibility for and entitlement to benefits, the administrator's decision must be upheld unless it is 'arbitrary, capricious, or an abuse of discretion.'"  Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004) (quoting Vlass v. Raytheon Emps. Disability Tr., 244 F.3d 27, 29 (1st Cir. 2001)).  This standard of review is deferential; that is, "the administrator's decision must be upheld if it is reasoned and supported by substantial evidence."  Gannon, 360 F.3d at 213.  "Evidence is substantial if it is reasonably sufficient to support a conclusion, and the existence of contrary evidence does not, in itself, make the administrator's decision arbitrary."  Id.  A reviewing court must decide only whether the administrator's denial of benefits was irrational, with any doubts tending to be resolved in favor of the administrator.  Liston v. Unum Corp. Officer Severance Plan, 330 F.3d 19, 24 (1st Cir. 2003).

The parties agree that this deferential standard of review applies here where the Plan provides that Bose has "authority to determine eligibility to participate in the Plan and eligibility for benefits," and Bose retains discretionary "authority to construe the terms of the Plan, including the authority to remedy any omissions, ambiguities or inconsistencies arise under the Plan."  AR

67, 207, 388; see D. 31 at 10-11; D. 35 at 16.  Accordingly, the Court will review Bose's decision

with respect to Tavares's claim using this standard of review.[10]

        2.     *Bose's Decision to Deny Tavares's Appeal for Pension Benefits was Not*
               *Arbitrary and Capricious*

        Whether Bose acted unreasonably in denying Tavares appeal for pension benefits under

the Plan is guided by the terms of the Plan itself.  As such, according to the Plan, an employee who

is rehired and previously received his distributed pension payment does not automatically receive

credit for his prior years of experience.  See AR 46-47, 176-77, 349-50.  If the employee wants to

bridge his years of service, he must timely repay the disbursement he received "before the later of

(1) two years after the Participant is rehired by the Employer or (2) the earlier of (a) five years

after the participant is rehired by the Employer, (b) the close of the first period of five consecutive

one-year Breaks in Service commencing after the original payment to the Participant, or (c) if the

payment was other than on account of separation from service, five years after the original

payment."  AR 46-47.  In determining how that provision is interpreted, Bose ultimately has the

discretion and authority to interpret the Plan, resolve ambiguities and evaluate claims.  AR 67,

---

[10] Where an ERISA plan administrator "both determines whether an employee is eligible for benefits and pays benefits out of its own pocket . . . this dual role creates a conflict of interest." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008).  Where such a conflict exists, "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits."  Id.  Here, Bose both determined whether a participant has a claim for pension benefits and is liable for benefits payable under the 1989, 2012 and 2017 Plans, AR 65-67, 207-09, 388-90, and accordingly, such structural conflict of interest exits.  An administrator can take "active steps to reduce potential bias and promote accuracy," Glenn, 554 U.S. at 117, and Bose did so here in having the Committee review the denial of his benefits claim. AR 277; D. 31 at 14-15.  Given this record (and in the absence of any suggestion that Bose's decision "was actually motivating by a conflicting interest," Cannon v. Aetna Life Ins. Co., No. 12-10512-DJC, 2013 WL 5276555, at *6 (D. Mass. Sept. 17, 2013)), the factor of structural conflict does not have dispositive weight here.  See, e.g., Gernes v. Health and Welfare Plan of Metropolitan Cabinet, 841 F. Supp. 2d 502, 508-09 (D. Mass. 2012).

207, 388.   Bose interpreted the Plan provision to mean that for those employees who have "experienced five consecutive one-year Breaks in Service, the two year repayment window applies."  AR 279; <u>see</u> AR 137.  Bose reasons that Tavares experienced a break in service of seventeen years and under Section 3.03 subpart two, the earliest date was "'(b) the close of the first period of five consecutive one-year Breaks in Service commencing after the original payment'" which was around 2004, as it was five years after Tavares received his 1999 distribution.  D. 31 at 12.  The later date then between subparts one and two would have been subpart one which required a two-year payment deadline after Tavares was rehired.  <u>Id.</u> Accordingly, Tavares could not bridge his prior years because he did not timely pay the disbursement back within the two-year time period.  AR 137, 275.  The Court holds that this is a reasonable interpretation of Section 3.03.

Tavares contends that Bose's interpretation of Section 3.03 was unreasonable and arbitrary. Specifically, Tavares claims that Bose did not appropriately consider the language in subpart two and the plain reading of the provision in subpart 2(a) requires that Tavares could have repaid his vested benefits based on the later of two years after Bose re-hired Tavares or five years after Bose re-hired Tavares.  D. 35 at 18-20.  Tavares reasons that the term "Break in Service," which is found in subpart 2(b), precludes Bose's interpretation of the Plan because the term, "Break in Service" can only apply to current employees, and could not have applied to rehired employees, like Tavares.  D. 41 at 10-12; D. 43 at 2-4.  The Court finds these arguments unavailing.

First, Tavares's interpretation of Section 3.03 effectively reads out of the provision the terms "the earlier of" by contending that subpart (b) does not apply to Tavares.  D. 43 at 3-4. According to Tavares, the interpretation of Section 3.03 required repayment based on "the later of (1) two years after the Participant is rehired by the Employer or (2) . . . (a) five years after the

Participant is rehired by the Employer."  D. 43 at 4.  Tavares recognizes that his reading of the Plan renders an "obvious redundancy" because the triggering event of being rehired is the same for determining repayment.  D. 43 at 4 n.2.  Tavares's reading of the Plan, however, would render the provision "the earlier of" superfluous and there is a "longstanding principle against reading plan terms to be superfluous."  Vendura v. Boxer, 845 F.3d 477, 486 (1st Cir. 2017) (affirming summary judgment based on denial of pension benefits and holding that plaintiff's contradicting interpretation of the plan was unreasonable because it rendered a plan provision superfluous); see O'Shea v. UPS Ret. Plan, 837 F.3d 67, 75 (1st Cir. 2016) (recognizing that plaintiff's interpretation of the plan terms was unreasonable because it "still reads the words 'after the Annuity Starting Date' out of the clause").

Second, Tavares's interpretation of Section 3.03, based on his reading that the reference to "Break in Service" in subpart 2(b) can only apply to a continuously employed employee, is similarly unpersuasive.  See D. 43 at 2-3.  By the plain terms of the 1989, 2012 and 2017 Plans, the term "Break in Service" is presumed to be a period where the participant is either on leave or has terminated their relationship with the Bose.  See AR 44-45, 165, 175-76, 337, 348-49.  For example, the term "Break in Service" is consistently used in Section 3.03 of the 2012 and 2017 Plans to refer to a "former Eligible Employee" who "again becomes an Eligible Employee after incurring a Break in Service" or who "becomes an Eligible Employee by reason of being rehired following a Break in Service."  AR 175-76, 348-49.  Section 3.03(c) appears under the title "Reemployment" in the 2012 and 2017 Plans, which presumably means that "Break in Service" does not apply to continuously employed employees.  See AR 175, 348.  Tavares's interpretation that "Break in Service" cannot apply to an employee who was rehired would effectively render the provisions of subpart 2(b) to be meaningless regarding any rehired employee and "imports a

definition" of the term "Break in Service" that is "inconsistent with its use elsewhere in the Plan." Cheever v. John Hancock Mut. Life Ins. Co., 206 F. Supp. 2d 155, 165 (D. Mass. 2002) (reasoning that an interpretation of a plan fails if it renders substantial portions of the provision superfluous).

Finally, Tavares contends that Bose's reasoning in its denial letters was insufficient as it did not analyze Bose's interpretation of Section 3.03, and specifically the interplay between the subparts that Bose has relies upon in this litigation.  See D. 41 at 7-8.  Tavares claims that Bose cannot now rely upon that interpretation of the Plan.  Id.  The Court disagrees.  Under ERISA, "[s]o long as the plan participant is provided a sufficient explanation to formulate further challenges to the denial, it is not necessary for an administrator to provide 'the reasoning behind the reasons.'" Mercier v. Boilermakers Apprenticeship & Training Fund, No. 07-cv-11307-DPW, 2009 WL 458556, at *17 (D. Mass. Feb. 10, 2009).  ERISA notice provisions do not require "strict compliance" so long as "'the beneficiary [was] supplied with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review.  O'Shea, 837 F.3d at 76 (rejecting plaintiff's argument that because the plan did not rely upon a certain provision of the Plan in its initial denial letter and therefore could not rely upon that section in litigation) (internal citation and quotation marks omitted).

Here, the denial letters included the specific provisions of the 1989, 2012 and 2017 Plan documents, including Section 3.03, as well as other plan documents that Bose relied upon, in assessing and determining Tavares's claim.  See AR 137, 273-76.  The initial denial letter on August 14, 2020 included the same interpretation of Section 3.03 that Bose relies upon here, that if Tavares "incurred a break in service the repayment to the plan must be made within two years" after he was rehired.  AR 137; see D. 31 at 12-13.  Based on the Administrative Record, Tavares

was sufficiently on notice of Bose's position, even if Bose did not spell out exactly how they calculated Section 3.03 in the denial letter.  See Niebauer v. Crane & Co., 783 F.3d 914, 927 (1st Cir. 2015) (rejecting plaintiff's claims that defendant provided insufficient notice of the specific reasons for the basis of denial because the denial memorandum "provided a procedural and factual background, in addition to a description of the relevant provisions of the plan and the information the committee considered in arriving at its decision, before summarizing its conclusion"); Dutkewych v. Standard Ins. Co., 781 F.3d 623, 637-38 (1st Cir. 2015) (affirming summary judgment for defendant and declining to "reject [Standard's] analysis as a post-hoc rationalization undeserving of deference" as plaintiff had adequate notice during the administrative process of the basis for the denial) (internal citation and quotation marks omitted).  Accordingly, the Court holds that Bose's interpretation of the Plan's provisions was not arbitrary and capricious.  The Court grants Bose's motion for summary judgment and denies Tavares's motion for summary judgment as to Count I.

### B.      Claim for Equitable Relief under 29 U.S.C. § 1132(a)(3)

Tavares also seeks relief under 29 U.S.C. § 1132(a)(3) which authorizes a plan participant to bring a civil action for "appropriate equitable relief" to address violations of, or enforce any provision of ERISA or the Plan.  29 U.S.C. § 1132(a)(3).  Section 1132(a)(3) is a "catchall" provision "offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy," which includes claims for breach of fiduciary duty.  Varity Corp. v. Howe, 516 U.S. 489, 512 (1996).  Tavares claims that he is entitled to relief in the form of equitable estoppel and surcharge based on Bose's breach of fiduciary duties from misrepresentations that Tavares was required to repay the pension disbursement within two years of being rehired when Tavares was never informed of any repayment provision, Tavares had five

years and not two years to repay the pension disbursement according to his interpretation of the Plan and Tavares reasonably relied upon Bose's Benefit Summary included in the offer letter that only seven years of service was required to fully vest in the Plan.  D. 35 at 20-25;  see D. 1 ¶¶ 73-81.  Bose counters that Tavares's equitable claim fails as the matter of law because the First Circuit has not recognized equitable estoppel and surcharge as appropriate equitable relief under § 1132(a)(3) and even if the Court did, Tavares cannot establish the elements of such claims.  D. 31 at 19-25; D. 38 at 13-24.

The First Circuit has yet to address whether equitable estoppel and surcharge are forms of appropriate equitable relief under § 1132(a)(3).  See Guerra-Delgado v. Popular, Inc., 774 F.3d 776, 782 (1st Cir. 2014) (recognizing that "many of our sister circuits have recognized equitable estoppel claims under 502(a)(3)(B)" but declining to consider whether the claims are cognizable); Turner v. Liberty Mut. Ret. Benefit Plan, No. 20-cv-11530-FDS, 2023 WL 5179194, at *10 (D. Mass. Aug. 11, 2023) (recognizing that the First Circuit has not addressed the scope of the surcharge remedy under § 1132(a)(3)).  Any potential relief, however, will depend upon whether Bose breached its fiduciary duties by misrepresenting the pension disbursement payment period.

### 1.   Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "A fact is material if it carries with it the potential to affect the outcome of the suit under applicable law."  Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (citation omitted).  The movant "bears the burden of demonstrating the absence of a genuine issue of material fact."  Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).  If the movant meets its burden,

the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial.  See Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010).  The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor."  Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).  "When deciding cross-motions for summary judgment, the court must consider each motion separately, drawing inferences against each movant in turn."  Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

### 2.   Equitable Estoppel

The First Circuit has yet to recognize a claim for equitable estoppel under § 1132(a)(3) but the Court has delineated certain limits to when a claim is cognizable.  The First Circuit declines to recognize an equitable estoppel claim where (1) the claim is based on an inadequate plan summary, (2) the plan terms are unambiguous and (3) the alleged misrepresentations would seek to modify rather than interpret the plan.  See, e.g., Guerra-Delgado, 774 F.3d at 782 (recognizing that an equitable estoppel claim under ERISA "is necessarily limited to statements that *interpret* the plan and cannot extend to statements that would *modify* the plan") (emphasis in original); Livick v. The Gillette Co., 524 F.3d 24, 31 (1st Cir. 2008) (recognizing that "courts which do recognize ERISA-estoppel do so only when the plan terms are ambiguous"); Mauser v. Raytheon Co. Pension Plan for Salaried Emps., 239 F.3d 51, 58 (1st Cir. 2001) (holding that "there is not a more general equitable estoppel claim based solely on an inadequate Plan Summary").

Tavares seeks equitable estoppel on the basis that the Plan's terms are ambiguous and he was misled by the following alleged misstatements and omissions:  (1) statements in the Bose Benefit Summary that he would be fully vested after seven years of employment, (2) statements

by Berthiaume that Bose was required to repay the pension disbursement within two years when under Tavares's interpretation of the Plan, Bose had five years, and (3) omissions by failing to inform Tavares within two years of his rehire that he was required to repay the prior distribution to bridge his prior years of service.  D. 35 at 20-24; D. 43 at 9.

An equitable estoppel claim consists of two elements: "(1) the first party must make a definite misrepresentation of fact with "reason to believe the second party will rely on it, and (2) the second party must reasonably rely on that representation to its detriment." Guerra-Delgado, 774 F.3d at 782 (internal citations omitted).  The parties agree that to the extent the First Circuit would recognize an equitable estoppel claim, Tavares's claim will depend upon on whether Tavares's reliance on these misrepresentations was reasonable and whether the statements in the Benefit Summary or by Berthiaume modify the Plan terms and the plan terms are ambiguous.  D. 31 at 20-23; D. 35 at 22-24; D. 41 at 14-17; D. 43 at 5-10.

a)   <u>Misrepresentations that Tavares Had Two Years, Instead of Five Years, to Repay the Pension Disbursement</u>

The First Circuit has noted that to the extent a plan participant relies on an informal statement, equitable estoppel may apply if the plan's terms are ambiguous.  Livick, 524 F.3d at 31. The Court has held that "if the provision is clear, however, an informal statement in conflict with it is in effect purporting to *modify* the plan term, rendering any reliance on it inherently unreasonable." Id. (emphasis in original).

Tavares claims that the Plan's terms are ambiguous and Berthiaume's statement which quoted from the Summary Plan Description that Tavares would need to "repay the previous payment received with interest within two years after your reemployment" was a misrepresentation because Tavares had five years within which to make the repayment.  AR 133; D. 35 at 22-24.  As the Court previously held, the Plan terms are not ambiguous and therefore any alleged

misrepresentation by Berthiaume that quotes an informal summary plan cannot support a claim for equitable estoppel.  See Guerra-Delgado, 774 F.3d at 783 (affirming summary judgment and holding that because "[plaintiff] has not shown any ambiguity in the Plan, his equitable estoppel claim necessarily fails"); Livick v. Gillette Co., 492 F. Supp. 2d 1, 14 (D. Mass. 2007) (concluding that allegations of human resources department misinterpreting plan terms could not support a claim for equitable estoppel because "such a conclusion would be clearly erroneous in light of established precedent explaining that estoppel can only be used to enforce interpretations of ambiguous language"), aff'd, 524 F.3d 24 (1st Cir. 2008).

> b)     Misrepresentations that Bose Failed to Inform Tavares of his Repayment Requirement to Bridge Service

Tavares claims that Bose never informed him that he needed to repay his disbursement within a certain period to bridge his time and this omission constitutes a misrepresentation. D. 35 at 23; D. 43 at 9.  This claim fails for a few reasons.  First, Bose was not under any obligation to seek out Tavares and provide him with notice concerning his repayment timeline.  Waters Corp. v. Millipore Corp., 2 F. Supp. 2d 66, 80–81 (D. Mass. 1997) (rejecting breach of fiduciary duty argument based on plaintiff's claims that defendants failed to inform retiring employees about the value of transferring their accounts), aff'd, 140 F.3d 324 (1st Cir. 1998). Second, even assuming that Bose had an obligation to do so, such an omission does not constitute a "definite misrepresentation" as required for estoppel.  Mauser v. Raytheon Co. Pension Plan for Salaried Emps., 31 F. Supp. 2d 168, 175 (D. Mass. 1998) (allowing summary judgment for defendant where omission that "break-in-service employees may not have their pre-1981 service calculated in accordance with the Amended Formula" was not a "definite misrepresentation" and neither was "the failure to refer to [plaintiff's] pre-1981 service in his 1990 statement of benefits"), aff'd on other grounds, 239 F.3d 51 (1st Cir. 2001).  Here, as in Mauser, the Court is similarly not persuaded

that Tavares's claim that Bose failed to proactively inform Tavares of his repayment period, when Bose had no such duty, constitutes an affirmative misrepresentation.

        c)      <u>Tavares's Reliance on the Benefits Summary was not Reasonable</u>

Tavares contends that he is entitled to equitable estoppel because he reasonably relied upon the Bose Benefit Summary provided in his offer letter which stated that "[v]esting begins after three years of service, you are fully vested after seven years." AR 93; D. 35 at 21-24; D. 43 at 5, 9. According to Tavares, based on that statement, he believed that his prior four years of service would automatically be counted towards his years of service, and he only needed to complete three additional years of service to fully vest. D. 35 at 22-23; D. 43 at 5 (citing AR 30-31, 92-93). Tavares claims that he was misled because no one from Bose ever informed him that as a rehired employee he would need to pay back the pension disbursement he previously received to bridge his prior years of services. D. 43 at 5 (citing AR 31). Since, the Court has concluded that the Plan terms are unambiguous, Tavares cannot assert a claim for equitable estoppel by relying upon the Benefit Summary that seeks to modify the express terms of the plan. <u>Livick</u>, 524 F.3d at 31.

Even if the Benefit Summary was misleading, Tavares fails to adduce sufficient facts to show that he reasonably relied upon the Benefits Summary to support a claim for equitable estoppel. To show reasonable reliance, "[i]t is not enough to show a 'mere expectation' that certain benefits will materialize; action must have been taken in reliance on reasonable expectations formed" after reading the Benefit Summary. <u>Mauser</u>, 239 F.3d at 55-56. The Benefit Summary stated that "vesting begins after three years" and Tavares received quarterly benefit statements, which showed that his vested balance following his rehire in 2016 started at zero. AR 95, 97, 101, 104, 109, 112; D. 38 at 21. If Tavares believed that his prior four years counted towards his vested benefit, he presumably should have already been partially vested and receiving vested benefits.

Tavares, however, did not act on this information.  Mauser, 239 F.3d at 56 (holding that plaintiff failed to show reasonable reliance to support a claim for equitable estoppel when he became aware "after receiving his annual statement of benefits, that he might not be receiving credit under the new formula for his pre–1981 years of service").  The undisputed facts show that Tavares only emailed in April 2019 inquiring whether his prior "years count toward my pension calculation" and Berthiaume told him that he could not bridge his service because he had not repaid his prior disbursement within the earlier, two-year window.  AR 132-34.  Tavares only challenged the denial of these benefits over a full year later in July 2020 when he was terminated.  AR 30-31.  This delay in challenging his claims after the April 2019 email exchange further undermines that Tavares's reliance on the Benefit Summary was reasonable.  For these reasons, the Court denies summary judgment on Tavares's claim of equitable estoppel and grants summary judgment for Bose.

### 3.    Surcharge

Tavares also seeks surcharge in "an amount equal to the value of his pension benefits wrongfully retained by [Bose], which is the difference in the amount of his pension benefits between the amount granted to him without the inclusion of his years of service from his first period of employment with Bose and the amount he would have received with inclusion of those years of service."  D. 35 at 24.  Tavares argues that he is entitled to surcharge based on the "multitude of misrepresentations and misstatements by [Bose], all of which constituted fiduciary breaches."  Id.

The parties dispute whether a claim for surcharge is recognized under § 1132(a)(3) and if it is, whether Tavares is entitled to surcharge.  See D. 31 at 24-25; D. 35 at 24-25; D. 38 at 21-24; D. 41 at 17-18; D. 43 at 10-12; D. 44 at 21-22.  "[S]urcharge is the remedy by which plaintiffs are made whole from an actual loss that resulted from a fiduciary's breach of duty."  Est. of Smith v.

Raytheon Co., 573 F. Supp. 3d 487, 509 (D. Mass. 2021).  To prove surcharge, a plaintiff must show "that the violation injured [him].  But to do so, [he] need only show harm and causation." Id. at 510 (citing CIGNA Corp. v. Amara, 563 U.S. 421, 444 (2011)).  To show causation, a plaintiff must prove that they suffered loss resulting from a breach of fiduciary duty.  Id. at 511.

The Court recognizes that there is a dispute concerning whether surcharge is available as an equitable remedy.  In CIGNA Corp. v. Amara, 563 U.S. at 439-42, the Supreme Court characterized "appropriate equitable relief" under § 1132(a)(3) as reformation, equitable estoppel and surcharge.  Id.  Although the Supreme Court's analysis is arguably dicta, following Amara, some Circuits have adopted its reasoning in analyzing claims for equitable relief and have since held that surcharge is an appropriate equitable remedy under § 1132(a)(3).  See Gabriel v. Alaska Elec. Pension Fund, 773 F.3d 945, 957-58 (9th Cir. 2014); Silva v. Metro. Life Ins. Co., 762 F.3d 711, 725 (8th Cir. 2014); Osberg v. Foot Locker, Inc., 555 F. App'x 77, 80-81 (2d Cir. 2014) (summary order); Kenseth v. Dean Health Plan, Inc., 722 F.3d 869, 882 (7th Cir. 2013); Gearlds v. Entergy Servs., Inc., 709 F.3d 448, 452 (5th Cir. 2013); McCravy v. Metro. Life Ins. Co., 690 F.3d 176, 180-81 (4th Cir. 2012).

District courts within this Circuit have similarly recognized surcharge as a potential remedy following Amara.  See, e.g., Turner, 2023 WL 5179194, at *6 (recognizing that Amara identified surcharge as an available equitable remedy); Est. of Smith, 573 F. Supp. 3d at 509 (recognizing that after Amara "there are circumstances under which disgorgement and/or surcharge may properly be considered equitable relief in the form of restitution").

The Fourth Circuit in Rose v. PSA Airlines, Inc., 80 F.4th 488, 503 (4th Cir. 2023), however, reconsidered its holding in McCravy and concluded that "Amara's approach is antithetical to a proper § 502(a)(3) analysis" and surcharge is not an appropriate equitable remedy.

Id.  In Rose, the Fourth Circuit considered whether PSA Airlines had wrongfully denied health coverage to plaintiff's son, who died awaiting a heart transplant.  Id. at 493.  In affirming the district court's denial of equitable relief, the Fourth Circuit held that remedies like "surcharge" were not remedies that were "typically" available in equity and a plaintiff could only recover funds when "plaintiff pointed to specific funds" that defendant possessed as a result of unjust enrichment. Id. at 499-500.  The Court relied upon the Supreme Court's holding in Mertens v. Hewitt Associates, 508 U.S. 248, 255 (1993) and Great-West Life & Annuity Insurance Company v. Knudson, 534 U.S. 204, 213 (2002)  which held that a remedy under ERISA is equitable if it was typically available in equity.  Rose, 80 F.4th at 500-01.  The Fourth Circuit held that the Supreme Court restated this approach in Montanile v. Board of Trustees of National Elevator Industry Health Benefit Plan, 577 U.S. 136, 139, 148 n.3 (2016) (holding that the interpretation of equitable relief in Mertens and Great-West remains unchanged and "when a participant dissipates the whole settlement on nontraceable items, the fiduciary cannot bring a suit to attach the participant's general assets under § 502(a)(3) because the suit is not one for 'appropriate equitable relief'"), which is inconsistent with the dicta in Amara.  Rose, 80 F.4th at 503-04.  The Fourth Circuit concluded that it was returning to the rule applied prior to Amara that plaintiffs who seek personal liability from defendants to pay a sum of money are not seeking equitable relief, effectively overturning its prior decision in McCravy.  Rose, 80 F.4th at 504.  Unlike the Fourth Circuit, other Circuits have not revisited their holdings following Amara.

The Court need not resolve the dispute, however, because even assuming *arguendo* that surcharge is an available remedy here, the undisputed facts do not show that Bose breached its fiduciary duty to Tavares to be entitled to such relief.  Tavares contends that Bose breached its fiduciary duty to Tavares by failing to provide accurate statements concerning the repayment

period, and an arbitrary application of Section 3.03 which calculated that Tavares had a two-year repayment window.  D. 35 at 20-21, 24-25; D. 41 at 17-18.  Tavares's claims are unavailing as "'advising participants of their rights and options under the plan,' is not treated as a fiduciary function." Brenner, 2015 WL 1307394, at *9.  In Brenner, the plaintiff claimed that Met Life failed to communicate a notice of conversion rights despite plaintiff's inquiries about the status of the life insurance policy. Id. at *8.  The Court held that "without more, failure to send an individual notice of conversion does not give rise to a breach of fiduciary duty." Id. at *11.  Here, Tavares has not adduced evidence that Bose did anything more than communicate Tavares's rights under the Plan as stated in the provided Plan materials. See D. 35 at 20-21; D. 41 at 18.

Moreover, Tavares has not adduced evidence that Bose's statements were inaccurate concerning the payment period.  The undisputed facts reflect that Bose maintained that Tavares had a two-year repayment window which is based on the unambiguous Plan terms. See AR 133, 137, 273-76.  Bose cannot be found to have breached a fiduciary duty to Tavares based upon a reasonable interpretation of the Plan terms. See Schwartz v. Keolis Commuter Servs., No. 16-cv-11506-LTS, 2018 WL 1411202, at *9 (D. Mass. Mar. 20, 2018) (concluding that plaintiffs' claim for breach of fiduciary duty "overlap with [p]laintiffs' challenge to [defendant's] benefits determination" and because the court found that defendant's determination was not arbitrary and capricious or unreasonable there was no breach of fiduciary duty).  For all of these reasons, the Court allows summary judgment for Bose and denies summary judgment for Tavares as to Count II.[11]

---

[11] Given this ruling on the basis stated above, the Court does not reach Bose's alternative argument that Tavares's equitable claims are barred by the contractual limitation in the 2017 Plan.  D. 31 at 25.

**V.      Conclusion**

For the foregoing reasons, the Court ALLOWS Bose's motion for summary judgment, D. 30, and DENIES Tavares's motion for summary judgment, D. 34.

**So Ordered.**

/s Denise J. Casper
United States District Judge